******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STUART C. CARLSON ET AL. *v.*
VERNON F. CARLSON ET AL.
(AC 43007)

Elgo, Cradle and Flynn, Js.

*Syllabus*

The plaintiffs sought, inter alia, a partition of the assets and a dissolution of a family partnership, of which the plaintiffs and the named defendant were original members. The plaintiffs claimed that there was significant discord among the members, including that the defendant occupied certain real property in Manchester owned by the partnership without paying rent and refused to remit rent received from nonpartner tenants. In 2015, the court dissolved the partnership and appointed R as a receiver to wind up the partnership and to sell certain real property owned by the partnership. Later that year, during the trial, the plaintiffs and the partnership reached a settlement agreement and submitted a partial settlement notice, which stated that issues remained in dispute between the plaintiffs and the defendant. Soon thereafter, the plaintiffs and the defendant reached a settlement agreement. In accordance with the settlement agreement, the trial was adjourned and certain real property was sold with partial distributions made to the parties, with the exception of the defendant, who was to receive a certain parcel of real property, the value of which was to be deducted from his share of funds generated from the sale of real property. In 2017, the court approved the receiver's report, over the defendant's objection, which authorized the receiver to proceed with an application for a subdivision of real property. In 2018, the application for the subdivision of the property was approved and the court thereafter granted the receiver's motion for an order for the authority to list the lots for sale. Later that year, the defendant moved to inspect and copy financial records of the partnership, which the court denied. The defendant did not then appeal from that judgment. In 2019, the defendant filed a counterclaim, without a request for leave to amend or motion to amend. The defendant appealed from the court's judgment granting the plaintiffs' motion to strike the defendant's counterclaim, but failed to brief that claim. In 2020, the court appointed P as receiver. Thereafter, the defendant amended his appeal five times, challenging other actions of the court. *Held*:

1. The portion of the defendant's appeal challenging the trial court's denial of his motions to inspect and copy corporate and partnership tax returns and his motion to compel further discovery was dismissed, the defendant having failed to properly appeal those rulings of the court.

2. The portions of the defendant's appeal challenging the trial court's failure to address the dispute in the presettlement notice among the parties before the settlement was reached and its failure to order the plaintiffs to release all claims during the 2015 settlement negotiations were dismissed: these events occurred nearly four years before the defendant filed the present appeal; moreover, these portions of the defendant's appeal are not from judgments of the court and are not judgments encompassed in his notice of appeal.

3. This court declined to review the defendant's claim that the trial court erred in authorizing an application for a subdivision of a property owned by the partnership as the claim was inadequately briefed, the defendant having failed to cite any statute, case law, rule of court, or other legal authority that could render the court's action improper.

4. The trial court did not err in appointing P as a receiver, as the appointment of a receiver is within the sound discretion of the trial court.

Argued November 9, 2021—officially released February 8, 2022

*Procedural History*

Action seeking, inter alia, the dissolution of a partnership, and other relief, brought to the Superior Court in the judicial district of Hartford, where the named

defendant filed a counterclaim; thereafter, the court, *Noble*, *J.*, granted the plaintiffs' motion to strike the counterclaim, and the named defendant appealed to this court; subsequently, the court, *Noble*, *J.*, granted a receiver's motion for discharge of lis pendens filed by the named defendant on certain real property owned by the partnership, and the named defendant amended his appeal; thereafter, the court, *Noble*, *J.*, appointed Peter Carlson as receiver, and the named defendant amended his appeal. *Appeal dismissed in part*; *affirmed*.

*Vernon F. Carlson*, self-represented, the appellant (named defendant).

*William G. Reveley*, with whom, on the brief, was *Malcolm F. Barlow*, for the appellees (plaintiffs and defendant Kristine Carlson).

*Opinion*

PER CURIAM. The self-represented defendant, Vernon F. Carlson,[1] appeals from various judgments and actions of the trial court stemming from a 2007 action commenced by the plaintiffs, Stuart C. Carlson, Patricia W. Carlson, and Alexis S. Carlson,[2] and a subsequent settlement agreement that was reached by the parties in 2015. On appeal, the defendant claims that the court erred (1) in denying his motions to inspect and copy corporate and partnership tax returns, (2) by not addressing the dispute in the presettlement notice between the parties before a settlement was reached, (3) in not ordering the plaintiffs to release all claims during the 2015 settlement negotiations, (4) in authorizing an application for a subdivision of a property owned by the partnership, and (5) in appointing Peter Carlson as receiver. We conclude that the defendant's first three claims must be dismissed. As for the fourth and fifth claims, for the reasons set forth herein, we affirm the judgments of the court.

The court set forth the following facts and procedural history of the case in its February 5, 2020 memorandum of decision granting the plaintiffs' motion to terminate stay. "The long history of this case began with a complaint filed in 2007 by the plaintiffs . . . . The complaint alleged, and the parties do not dispute, that the parties were members of a partnership referred to as Carlson Associates. The parties possessed varying percentages of interest in the partnership. Stuart Carlson was alleged to have been the managing partner. The court file reveals that no written partnership agreement governed the relations among the partners or between the partners and the partnership. The plaintiffs alleged in their original complaint that the assets of the partnership consisted of fourteen parcels of real estate located in the towns of Manchester . . . and Glastonbury . . . and loans by Carlson Associates to Karen [Carlson], Kristine [Carlson] and the defendant. The two count complaint asserted claims for partition of the assets of the partnership and its dissolution. These claims were grounded on the existence of significant discord among the partners, which included the occupancy of Karen [Carlson] and the defendant of partnership properties without paying rent and the refusal to remit rent received from nonpartner tenants. Karen [Carlson] and the defendant were alleged to have refused to agree to the sale of any of the partnership properties although the expenses and liabilities of the partnership, including past due real property taxes, exceeded its income. Stuart [Carlson] and Patricia [Carlson] claimed in the complaint that they loaned money to the partnership without repayments, and further that the partnership loaned money to the defendant, Kristine Carlson and Karen Carlson, which had not been repaid. The plaintiffs additionally sought settlement of accounts and contribu-

tions between the [parties].

"After the filing of the complaint, four years lapsed with little activity. Stuart Carlson died on January 23, 2011, and Patricia Carlson, the administratrix of his estate, was substituted as a [plaintiff]. In 2012, the matter was dismissed for failure to prosecute and subsequently reopened. Three more years passed in the service of disagreement. During this time, the [plaintiffs] moved for court orders to sell four partnership properties in 2012. . . . The defendant objected. In 2013, the defendant moved for an order permitting him to inspect partnership records. . . . Later that year, the [plaintiffs] moved successfully, over the objection of the defendant, for a court order permitting the partnership to enter into a listing agreement with a real estate agent to market and sell the remaining properties. . . . The movants asserted that the defendant had refused to sign any listing agreement. In the meantime, foreclosure proceedings were commenced by the town of Glastonbury for unpaid property taxes. . . . Despite the foreclosure proceedings, the defendant continued to resist the sale of the properties including those under contract. . . . The sale of the properties under contract was ultimately consummated, apparently in 2014. On May 26, 2015, the court . . . dissolved the partnership and appoint[ed] Richard Conti, Esq. as a receiver. . . . Despite multiple offers to purchase certain other properties of the partnership, the partners were unable to agree on their sale of the listing of other properties causing the offers to be withdrawn. . . .

"On November 17, 2015, the case came before the court for trial. The operative pleadings at the time of trial were the amended complaint dated November 9, 2015, and the answer with setoffs of the defendant, also dated November 9, 2015. At no time during the prior eight years during which the action was pending had the defendant asserted a counterclaim or cross claim. The [plaintiffs] reached a settlement agreement among themselves and with the partnership. On the fourth day of evidence, the defendant and the [plaintiffs] reached a settlement. The settlement included an adjournment of the trial and payment of $102,000 to Patricia Carlson. The remaining property was to be appraised and, with the exception of the property known as 637 South Main Street in Manchester, sold with the proceeds of the sales to be distributed among the partners according to their varying partnership percentages. The defendant was to receive the 637 South Main Street property, the value of which was to be deducted from his share of funds generated from the sale of the property. The bills of any creditors of the partnership and the receiver were to be paid before any distributions were made. Distributions to the partners were subject to the approval of the court, which was to retain jurisdiction of the matter for the winding down of the partnership assets and debts.

"Pursuant to the settlement agreement, including the adjournment of the trial, a number of properties owned by the partnership were sold and partial distributions made to the parties with the exception of the defendant. The defendant made objections to both. . . . The defendant also objected at various times to the payment of fees to the receiver. . . . The attendant delay in making a distribution to the defendant involved the uncertainty relative to the value of the total assets of the estate and the value of the 63[7] South Main Street property. Disputes arose (1) between the defendant and an easement holder over 637 South Main Street, (2) whether the defendant and Karen Carlson remained indebted to the partnership as had previously been claimed by Stuart [Carlson] and Patricia Carlson and (3) whether to subdivide one of the parcels of property. Two attorneys' liens for work done on behalf of the defendant by two different attorneys were presented to the receiver for payment. The court declined to treat the attorneys' fees as partnership debt because it was work done primarily for the benefit of the defendant as evidenced by court filings. Any claims against the defendant and that might have remained after the settlement agreement were withdrawn, on the record and in a filing with the court, by the [plaintiffs]. The disagreement over the easement remains. The court granted approval, over the objection of the defendant, to subdivide the parcel at issue. [Karen] Carlson died in 201[7], and her interests were represented by [Kristine] Carlson as the executrix of the estate of [Karen] Carlson.

"On March 21, 2019, a counterclaim was, for the first time, asserted by [the defendant] against 'Patricia Carlson, Alexis Carlson, Kristine Carlson and Attorney William G. Reveley [counsel for the partnership, Patricia Carlson individually and as administratrix of Stuart Carlson's estate, and Alexis Carlson], Attorney Mary Rossettie [prior counsel for the estate] and the estates of Stuart C. Carlson and Karen Carlson.' The counterclaim was procedurally improper in that it was filed without a request for leave to amend, or motion to amend, as required by Practice Book § 61-10. The counterclaim named two attorneys as defendants, who were not parties to the action without permission of the court as required by Practice Book § 10-11 and General Statutes § 52-102a. Moreover, the court interpreted the settlement agreement, involving an adjournment of the trial, as a general release of any and all claims the parties had against each other. Finally, the court notes that the conduct complained of by the defendant in his counterclaim, which asserts counts of breach of fiduciary duties and abuse of process, assert claims for conduct that is outside of the statute of limitations. On April 15, 2019, all the other parties joined in an objection, expressed through the vehicle of a motion to strike, to the counterclaim on the above grounds and together filed a motion to enforce the settlement agreement. The court granted

the motions on May 28, 2019, ordered the counterclaim stricken, and the defendant appealed.

"On June 21, 2019, this court granted the joint motion of all parties excluding the defendant to terminate the automatic stay imposed by Practice Book § 61-11. The motion was limited to lifting any stay imposed on the filing of a Mylar,[3] necessary to effect the subdivision of 637 South Main Street, Manchester. The filing of the Mylar was a condition subsequent to the permitting of the property by the appropriate municipal boards. The receiver supported the lifting of the stay to file the Mylar because the liquid assets under his control were diminishing and the available partnership funds would become insufficient to pay its debts, a refrain commonly voiced over the prior years. The court, pursuant to Practice Book § 61-11 (d), granted the motion finding that although the [defendant] had not filed the appeal only for delay, the due administration of justice required the termination of stay.

"Thereafter, on July 19, 2019, the receiver filed a motion for discharge of lis pendens. In his motion, the receiver noted the active efforts underway to sell the remaining parcels including those that are subject to subdivision on Line Street in Manchester and two parcels to the rear of Line Street in Glastonbury. The receiver alerted the court that notices of lis pendens had been filed by the defendant on both parcels and moved for their discharge. The motion was joined by the [plaintiffs] and objected to by the defendant. The receiver, and the [plaintiffs], asserted that the two lis pendens were significantly impeding their ability to market and ultimately sell the properties. The receiver and the [plaintiffs] referred to the diminishing liquid funds from which to pay taxes and ongoing fees related to the winding down. On September 16, 2019, the court granted the motion to discharge from which order the defendant appealed by way of amendment to the original appeal. On January 2, 2020, the [plaintiffs] moved to terminate the stay attendant to the amended appeal of the order discharging the lis pendens. A hearing was held on the motion to terminate the stay on January 28, 2020."[4] (Footnote added.)

The following appellate procedural history is pertinent to our resolution of the defendant's appeal. On June 3, 2019, the defendant appealed from the court's May 28, 2019 judgment granting the plaintiffs' motion to strike his counterclaim. Thereafter, the defendant filed five amended appeals challenging other actions of the court. In his first amended appeal form, the defendant stated that he was appealing from the following: "motion for discharge of lis pendens, interim report of receiver, request for order." The defendant never briefed his appeal of the striking of his counterclaim, nor did he brief his appeal of the motion for discharge of lis pendens. These two claims on appeal are thus

deemed abandoned.

The defendant's subsequent four amended appeals listed several other actions of the court. In his third amended appeal, he listed, among other things, that he was challenging the court's decision to appoint Peter Carlson as receiver. This claim is the only action from those four amended appeals that the defendant has briefed. The remaining claims listed in the amended appeal forms are thus deemed abandoned.

Additionally, this court dismissed portions of the defendant's appeal prior to oral argument. On February 20, 2020, this court granted the plaintiffs' motion to dismiss the defendant's second amended appeal, but only as to the portion of the appeal challenging the court's November 18, 2019 order terminating the appellate stay. On June 9, 2021, this court granted the plaintiffs' motion to dismiss the defendant's fifth amended appeal, which stated that he was appealing from his "objection to the filing of Carlson Associates' 2019 partnership federal income tax returns." Additional facts and procedural history will be set forth as necessary.

## I

The defendant briefs that the court erred in denying his motions to inspect and copy corporate and partnership tax returns. The defendant's brief appears to challenge the court's rulings on two separate motions. First, on November 6, 2018, the defendant filed a "motion to inspect and copy financial records" of the partnership. On November 19, 2018, the court denied that motion. The defendant did not then appeal from that judgment, nor has he done so now on any of his appeal forms. Second, on August 7, 2020, the defendant filed a motion to compel discovery of the 1986 income tax returns of SHVC, Inc.[5] On August 14, 2020, the court denied that motion. In its order denying the motion, the court stated: "The discovery is not calculated to lead to the discovery of admissible evidence as this case settled in 2015."

Practice Book § 61-9 provides in relevant part: "Should the trial court, subsequent to the filing of a pending appeal, make a decision that the appellant desires to have reviewed, the appellant shall file an amended appeal within twenty days from the issuance of notice of the decision as provided for in Section 63-1. . . ." The defendant did not amend his appeal to include a claim regarding the court's August 14, 2020 order denying his motion to compel further discovery. Because the defendant has not properly appealed either ruling, we cannot address his claim challenging those rulings. Accordingly, we must dismiss this portion of the appeal.

## II

The defendant next briefs that the court erred by not addressing the dispute in the presettlement notice

among the parties before a settlement was reached. It is unclear what judgment of the court from which the defendant appeals. The record indicates that on November 16, 2015, the plaintiffs, Kristine Carlson, and Karen Carlson filed a partial settlement notice indicating that they had reached a settlement in the underlying action. The notice stated: "Issues remain in dispute as between the plaintiffs and [the defendant]." The defendant's claim presumably stems from that notice, as we are unaware of any other presettlement notice filed by any party. The settlement occurred on November 25, 2015, nearly four years before the defendant filed the present appeal. His brief does not reference any judgment from which he is appealing and none of his appeal forms reference any judgment concerning a presettlement notice. Accordingly, we must dismiss this portion of the appeal as it is not from a judgment of the court and it is not a judgment encompassed in his notice of appeal.

## III

The defendant next briefs that the court erred in not ordering the plaintiffs to release all claims during the 2015 settlement negotiations. The claim he attempts to raise, like the claim he attempted to raise in part II of this opinion, concerns events that occurred nearly four years before the defendant filed the present appeal and is not from a judgment of the court. Furthermore, none of his appeal forms references any judgment concerning this matter. Accordingly, we must dismiss this portion of the appeal as it is not from a judgment of the court and it is not a judgment encompassed in his notice of appeal.

## IV

The defendant next briefs that the court erred in authorizing an application for a subdivision of a property owned by the partnership. At the outset, we note that this claim that he now attempts to raise is not encompassed in his notice of appeal or amended notices. His first amended appeal, however, challenges the court's order allowing a receiver to market the lots created by the subdivision of that property. We reasonably can interpret the defendant's brief as challenging that order. Nevertheless, we decline to review this claim because it is inadequately briefed.

The following facts and procedural history are relevant to this claim. At all relevant times, the partnership owned a property at 637 South Main Street in Manchester. On August 8, 2017, the receiver reported to the court that this property "consists of approximately eleven acres of land with an existing three family home and two barns. All partners are in agreement that the best way to sell the land left after subdividing off the front corner (which is to be conveyed to [the defendant] pursuant to the settlement reached by the partners) is to subdivide the remaining acreage into building lots."

On September 11, 2017, the court issued an order approving of the receiver's report, which, in turn, authorized the receiver to proceed with an application for a subdivision of the property. The defendant did not appeal from the issuance of that order at that time or in his five later notices of appeal.

On September 5, 2018, the Planning and Zoning Commission of the Town of Manchester (commission) approved the application for a subdivision of the property. On October 15, 2018, the receiver filed a motion for an order in which he informed the court that the subdivision application had been approved and requested the authority to list the lots for sale at prices suggested by a local Realtor. On October 29, 2018, the court granted that motion. The defendant did not appeal from the granting of that motion.

On May 28, 2019, the defendant filed an objection to the "filing of resubdivision" of the property. The gist of the defendant's argument was that the subdivision application that was approved by the commission did not comply with the terms of the settlement agreement. The court did not rule on the defendant's objection.

The defendant's first amended appeal purports to appeal from the interim report of the receiver dated August 12, 2019, and from the request for an order. In that report, the receiver stated that "the resubdivision [of 637 South Main Street] is now perfected following approval, and the lots created thereby are available to transfer/sell." The receiver asked the court "whether to direct the [R]ealtor to continue marketing the . . . lots" created by the subdivision. The court approved the report and order on September 16, 2019. In his brief to this court, the defendant states in the heading for this claim that "the trial court err[ed] in allowing a comprehensive subdivision instead of just obtaining an appraisal."

"Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Internal quotation marks omitted.) *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016).

In the section of his brief regarding this claim, the defendant discusses matters that are unrelated to the subdivision of 637 South Main Street. He does not brief any statute, case precedent, rule of court, or other legal authority that could render the court's action improper. We, therefore, deem this claim inadequately briefed and decline to review it. Accordingly, we decline to review this portion of the defendant's appeal.

V

Finally, in his third amended appeal, the defendant

claims that the court erred in appointing Peter Carlson as receiver. "The application for a receiver is addressed to the sound legal discretion of the court, to be exercised with due regard to the relevant statutes and rules, and such exercise is not to be disturbed lightly nor unless abuse of discretion or other material error appears." (Internal quotation marks omitted.) *Antonino* v. *Johnson*, 113 Conn. App. 72, 77, 966 A.2d 261 (2009), quoting *Chatfield Co.* v. *Coffey Laundries, Inc.*, 111 Conn. 497, 501, 150 A. 511 (1930). After reviewing and considering the record in this case, including the briefs and arguments of the parties on appeal, we conclude that the court did not abuse its discretion in appointing Peter Carlson as receiver. There is no error.

The appeal is dismissed with respect to all claims except the claims regarding the authorization of an application for a subdivision and the appointment of a receiver; those judgments are affirmed.

[1] Kristine Carlson, Karen Carlson, and Carlson Associates were also named as defendants when the plaintiffs commenced the underlying action. Kristine Carlson and Karen Carlson were removed as defendants in 2015. Following Karen Carlson's death in 2017, the court, in 2018, granted the motion of Kristine Carlson, administrator of the estate of Karen Carlson, to be made a party defendant. Carlson Associates remains a defendant in the action but did not participate in the present appeal. Our references in this opinion to the defendant are to Vernon F. Carlson.

[2] Stuart C. Carlson died on January 23, 2011, and, on July 21, 2011, the plaintiffs moved to substitute Patricia W. Carlson, in her capacity as administratrix of the estate of Stuart C. Carlson, as a plaintiff in the action. On August 1, 2011, the court granted this motion.

[3] "A Mylar map is a map prepared on a thin polyester film suitable for recording on the land records." (Internal quotation marks omitted.) *500 North Avenue, LLC* v. *Planning Commission*, 199 Conn. App. 115, 118 n.2, 235 A.3d 526, cert. denied, 335 Conn. 959, 239 A.3d 320 (2020).

[4] On February 5, 2020, the court granted the plaintiffs' motion to terminate the stay.

[5] In that motion, the defendant stated that SHVC, Inc., was a family owned real estate investing company, and that Carlson Associates was formed in 1986 after SHVC, Inc., was dissolved.